## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DHCREEEION GLAPION** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 24-2232** |
| **SAKS FIFTH AVENUE, LLC** | * | **SECTION L** |

## ORDER & REASONS

Before the Court is a 12(b)(6) motion to dismiss filed by Defendant Saks Fifth Avenue, LLC ("Saks"). R. Doc. 11. Plaintiff Dchreeion Glapion opposes the motion. R. Doc. 17. After considering the record, briefing, and applicable law, the Court now rules as follows.

### I.    BACKGROUND

This case arises out of alleged discrimination against the Plaintiff by both employees and a customer of Defendant Saks. Plaintiff alleges that she was discriminated against and targeted during her employment by Saks employees acting within the scope of their employment, as well as repeatedly harassed by a customer, Terrell Cargo ("Cargo"). On May 23, 2022, Plaintiff was hired by Saks as a sales associate working on a commission basis. R. Doc. 1 at 2. She alleges that four months after she was hired by Saks, her male coworkers began discriminating against her by preventing her from selling to certain store patrons, claiming they were exclusively the male colleagues' customers. *Id.* at 2-3. Additionally, on November 27, 2022, Plaintiff discovered that a coworker had posted a disparaging video of the Plaintiff in which they called her a "goofy goober." *Id.* at 3. Plaintiff claims she reported this behavior to management, but no remedial action was taken. *Id.* Further, Plaintiff claims that on June 5, 2023 a male colleague called her a "Black Bitch" after she inadvertently got a key stuck in a merchandise case. *Id.* at 4. Plaintiff reported this incident to management, but they again took no remedial action. *Id.*

1

In addition to the conduct by employees of Saks, Plaintiff alleges several instances of sexual harassment by a customer, Cargo, over an 18-month period. *Id.* at 3-6. Plaintiff alleges that Cargo pulled the Plaintiff into a dressing room and attempted to kiss her, frequently visited the store to watch the Plaintiff work, followed the Plaintiff inside and immediately outside of the store, and grabbed her arm while saying "Happy Mother's Day Slim." *Id.* After each incident with Cargo, Plaintiff reported his behavior to store management. *Id.* Plaintiff alleges that her manager instructed her to leave the store or take her lunch break if she saw Cargo again. *Id* at 3. Plaintiff claims that she would therefore be unable to make commissions when Cargo was present. *Id.* Throughout the course of the alleged harassment, Plaintiff alerted the Defendant by telling her manager, sending a picture of Cargo to Asset Protection, and reporting the history of his behavior to human resources. *Id.* at 3-4. Approximately 11 months after the Plaintiff first reported an issue with Cargo, she filed a police report. *Id.* at 5. About two months after the Plaintiff filed the police report, she again met with management to discuss the issues with the customer. *Id.* Plaintiff avers that management told her she needed "more than a police report" to keep Cargo from entering the store and that she would have to file a restraining order. *Id.* Plaintiff claims that she was forced to take a one-month leave because she was depressed and afraid for her safety. *Id.* Cargo continued to enter the store until Plaintiff's termination. *Id.*

Following the Plaintiff's period of leave, she returned to Saks. *Id.* Upon her return, Plaintiff claims that she received conflicting information about where in the store she was allowed to make sales and that male associates were allowed to work in certain areas that she was not. *Id.* at 5. Plaintiff reported the behavior of her male coworkers to the Saks ethics hotline. *Id.* at 6. On June 8, 2024, Plaintiff was terminated allegedly because she entered an area of the store designated to certain male colleagues and assisted their clients. *Id.* Plaintiff attests that the cause given for her termination was pretextual as other male associates were able to enter any area of the store to assist

customers. Plaintiff believes she was actually terminated for filing the police report and complaining about the sexual harassment to her supervisors. *Id.* On June 13, 2024, Plaintiff filed an EEOC Charge of Discrimination against Defendant and received a Right to Sue letter. R. Doc. 11-3 at 1.

Plaintiff brings claims for discrimination, hostile work environment based on sex,[1] as well as retaliation pursuant to Title VII and the Louisiana Employment Discrimination law.[2] R. Doc. 1 at 9. Plaintiff also brings negligence claims pursuant to Louisiana Civil Code Article 2315. *Id.* at 10.

## II.    PRESENT MOTION

Defendant Saks seeks dismissal of two of the Plaintiff's claims: (1) retaliation and (2) hostile work environment on the basis of sex. First, Saks asserts that Plaintiff did not adequately exhaust her administrative remedies as to the retaliation claims because she failed to provide sufficient facts in her EEOC Charge of Discrimination. R. Doc. 11-1 at 3. Second, Saks alleges that Plaintiff cannot meet the necessary elements to bring a hostile work environment claim under Title VII or the LEDL. *Id.* at 5. In opposition, Plaintiff asserts that the EEOC charge must be liberally construed for litigation purposes. *Id.* at 6-7. She also summarizes the allegations of the harassment and retaliation made in the complaint, arguing that they meet the federal pleading standards. *Id.* at 9-15.

Defendant also argues that Plaintiff's negligence claims under Louisiana Civil Code article 2315 are barred by the Louisiana Workers' Compensation statute, 11-1 at 11-12. Plaintiff

---

1 While the EEOC charge mentions discrimination on the basis of race, Plaintiff does not mention race-based discrimination in her Complaint. Defendant notes this out in its motion to dismiss, arguing that Plaintiff seems to have abandoned her race-based claims. R. Doc. 11-1 at 3. Plaintiff does not refute this point in her opposition, nor does she argue that she brings claims on the basis of race.

concedes this in her opposition and withdraws the claims. R. Doc. 17 at 17. Accordingly, the Court will dismiss these claims.

## III.    APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV.    ANALYSIS

The Defendant seeks dismissal of Plaintiff's retaliation and her hostile work environment claim. The Court takes these issues in turn.

### A. Title VII Retaliation Claims

First, the Court will address Plaintiff's retaliation claims under Title VII and LEDL. [3] "To

---

[3] The Fifth Circuit has previously noted that due to the substantive similarities between the Louisiana and federal retaliation statutes, the outcome of such claims will be the same under both statutes. Accordingly, this Court – like other courts have done in the past – will address the Plaintiff's retaliation claims under the federal law. *McCoy*, 492 F.3d at 556 n. 4 (analyzing plaintiff's retaliation claim "only under the applicable federal precedents" because "Louisiana's anti-discrimination statute . . . is 'substantively similar' to Title VII such that "the outcome of

establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII [or the LEDL]; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Retaliation claims are analyzed under the same burden-shifting framework as discrimination clams: "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)). "At this stage, Plaintiff does not need to make out a prima facie case for retaliation to survive a 12(b)(6) motion." *Thompson v. Houma Terrebonne Hous.*, 2019 WL 2524591, at *3 (E.D. La. 2019). At the pleading stage, the plaintiff instead "must plead sufficient facts on all of the ultimate elements of a disparate treatment [or retaliation] claim to make his case plausible." *Id.* (internal quotations omitted).

Further, Title VII requires that before a plaintiff brings a lawsuit for discrimination, she must exhaust her administrative remedies by filing a "charge" with the EEOC. *Jones v. City of Houston*, 756 F. App'x. 341, 348 (5th Cir. 2018). The Court looks at the facts alleged in the EEOC charge and determines if the Title VII lawsuit arises from those facts. *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). To determine whether a plaintiff has administratively exhausted her claim, the scope of the EEOC charge is liberally construed. *Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017). A court must "'interpret[] what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the

---

[plaintiff's] . . . retaliation claims will be the same under the federal and state statutes.") (quoting *Trahan v. Rally's Hamburgers, Inc.*, 696 So. 2d 637, 641 (La. App. 1st Cir. 1997).

administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Pacheco*, 448 F.3d at 789). This requires courts to "engage in a fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

Defendants argue that Plaintiff failed to exhaust her administrative remedies because she did not allege enough facts to support a retaliation claim in her EEOC charge. The Court disagrees. In Plaintiff's EEOC charge, she asserts that she "believe[s] [she] has been discriminated against because of [her] . . . sex-female; and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended." R. Doc. 11-3 at 2. The Court finds that her charge included facts in support of this claim.

In her EEOC charge, Plaintiff alleges that she engaged in potentially protected Title VII activity. An employee has engaged in protected activity if she has "(1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceedings, or hearing." *Alleman v. Louisiana*, 698 F. Supp. 2d 644, 663-64 (M.D. La. 2010). Plaintiff states in the EEOC charge that after being sexually harassed by Cargo, she "filed a police report" in November of 2023. Other courts have held that filing a police report can constitute protected activity for Title VII purposes. In *Miller v. Madison County Board of Commissioners*, the court denied summary judgment for the employer, holding that the employee engaged in protected Title VII activity by reporting sexual harassment to the police and her supervisor. *Miller v. Madison Cnty. Board of Comm'rs*, 2023 WL 2837867, at *9 (S.D. Ind. Apr. 7, 2023); *see also Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001) (finding that "a plaintiff that reports such [sexual harassment] to the police clearly "opposes" it within the meaning of 42 U.S.C. § 2000e–3(a)"); Wiseman *v. Autozone, Inc.* 819 F. Supp. 2d 804,

6

819 (N.D. Ind. 2011) (noting that the employer made a "wise concession" that filing a police report is protected Title VII activity); *Garcia v. Yonkers Board of Educ.*, 188 F. Supp. 3d 353, 361 (S.D.N.Y. 2016) (same).

Plaintiff alleges that she filed a police report in response to sexual harassment she experienced in the scope of her employment and that she met with her managers to discuss the police report and request remedial actions. Thus, she sufficiently pled that she engaged in Title VII protected activity and satisfied the first element of a retaliation claim. While the Court certainly does not hold that Plaintiff's filing of a police report is definitively protected Title VII activity, the Court find that her allegation is sufficient to meet federal pleading standards.

Furthermore, Plaintiff alleges she was fired because she filed a police report, which constitutes an adverse action and satisfies the second element of a retaliation claim. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x. 437, 442 (5th Cir. 2007) ("termination is clearly an adverse employment action"). Finally, Plaintiff in her complaint alleges a causal connection between the protected activity and the adverse action. "To demonstrate the third element of a prima facie case of retaliation—a causal connection between the protected activity and the adverse action—a plaintiff must demonstrate that the employer's decision "was based in part on knowledge of the employee's protected activity." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (internal quotations omitted). Here, Plaintiff alleges that she made her supervisors aware of the police report she filed against Cargo and was ultimately terminated. Accepting the Plaintiff's well-pled complaint as true, the court infers a causal connection at this stage in the proceedings. Accordingly, the Court does not agree with Defendant that Plaintiff has failed to adequately exhaust her administrative remedies as to her retaliation claim.

### B. Title VII Hostile Work Environment Claim

To state a claim for hostile work environment, Plaintiff must allege that (1) she belongs to

a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Workplace harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651 (quotations omitted). This standard does not require a "tangible psychological injury," but it does necessitate more than a "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To determine whether the conditions of employment have been altered to the extent that the workplace has become "hostile," courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651 (quoting *Ramsey*, 286 F.3d at 268). "A single incident of harassment may be sufficiently severe to give rise to a claim in some instances, while a continuous pattern of much less severe incidents of harassment may be pervasive enough to violate Title VII in other cases." *Illinois Cent. R.R. Co. v. Brotherhood of Locomotive Eng'rs and Trainmen*, 505 F. Supp. 3d 626, 633 (E.D. La. 2020). In addition, "the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

While Defendant concedes that Plaintiff is a member of a protected class, it argues that she

is unable to meet the remaining four elements needed to bring a hostile work environment claim on the basis of sex. Overall, Defendant argues that the conduct Plaintiff alleges was not severe or pervasive enough to constitute a hostile work environment. It cites examples of cases where courts granted summary judgment for the employer where the conduct was not severe or pervasive enough. In one cited case, unwanted touching by a co-worker on one occasion and comments of a graphic and sexual nature over a period of six months were not sufficient. *Guidry v. Zale Corporation*, 969 F. Supp. 988 (M.D. La. 1997).

However, factual considerations available at the summary judgment stage are not available on a 12(b)(6) motion in which the Court looks only to the pleadings. In the Plaintiff's complaint, she alleges both ongoing harassment by coworkers and isolated incidents of gender-based comments including being called a "Black Bitch" by a male coworker, discovering a disparaging video of herself posted online by a colleague, and not being allowed to sell in certain areas of the store.

Furthermore, Plaintiff also alleges harassment by a customer, Cargo. It is well-established in the Fifth Circuit that a customer's behavior can give rise to a cause of action for a hostile work environment if the employer was aware of that behavior and allowed it to continue. *See Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 321-322 (5th Cir. 2019) ("Because the ultimate focus of Title VII liability is on the employer's conduct—unless a supervisor is the harasser, a plaintiff needs to show that the employer knew or should have known about the hostile work environment yet allowed it to persist[.]"). For example, in *Sansone v. Jazz Casino Company, LLC*, a casino employee was sexually harassed by a customer at least twice a week over a three-month period while operating a baccarat table. 2021 WL 3919249, at *1 (5th Cir. Sept. 1, 2021). Throughout the three-month period, the employee reported the customer's behavior to her supervisors but felt her claims were never adequately addressed. *Id.* at *4. The Fifth Circuit reversed this Court's grant of

summary judgment for the employer on the issue of hostile work environment, finding that genuine issues of material fact existed as to whether the employee adequately reported the behavior and if the employer responded appropriately. *Id.* Here, likewise, Plaintiff alleges several instances of sexual harassment by Cargo, including the incident in which he attempted to kiss her, grabbed her arm, and stalked her. Plaintiff alleges that she reported this behavior to her employer through meetings with her supervisors, contacting asset protection, and reporting her history with Cargo to human resources and nothing was done to prevent this behavior.

Overall, considering the behavior by Plaintiff's coworkers and Cargo, she has stated a viable claim for hostile work environment. Although Defendant contends that the behavior by Saks' employees or Cargo was not severe or pervasive enough to constitute a hostile work environment, this is a factual dispute inappropriate for a resolution on a 12(b)(6) motion.

## V.    CONCLUSION

Considering the foregoing;

**IT IS HEREBY ORDERED** that Saks Fifth Avenue, LLC's 12(b)(6) Motion to Dismiss, R. Doc. 11, is granted in part and denied in part. The motion is **GRANTED** in that Plaintiff's negligence claims arising under Louisiana Civil Code Article 2315 are dismissed, as Plaintiff concedes. Otherwise, the motion is **DENIED** as to all other claims.

New Orleans, Louisiana, this 12th day of February, 2025.

_____
HONORABLE ELDON E. FALLON